**Opinion issued September 13, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00879-CV

————————————

## IN THE ESTATE OF JAMES WILSON RIVERS, DECEASED

On Appeal from the Probate Court No. 1
Harris County, Texas
Trial Court Case No. 429,150

## MEMORANDUM OPINION

James Joseph Rivers, individually and as the administrator of his father's estate, sued his sister, Lucille Hunt, for disposing of their father's assets before and after their father's death in a manner that benefitted her individually and harmed the estate. Hunt answered and moved twice for a continuance of the trial setting. After the second reset, Hunt and her attorney failed to appear at the pretrial

conference and subsequent trial. A post-answer default judgment was entered against Hunt. She filed a motion for new trial with accompanying evidence, and Rivers responded with controverting evidence. The trial court denied the motion, and Hunt appealed.

In a single issue, Hunt contends that the trial court abused its discretion in denying her motion for new trial because she presented evidence that she did not receive notice of the trial setting and that her failure to appear was not intentional or due to conscious indifference.

Because the question of why a defaulting party failed to appear is a question of fact, there was controverting evidence from which the trial court could have determined that Hunt's failure to appear was intentional or consciously indifferent conduct, and we must defer to the trial court's credibility determinations when presented with controverting evidence, we affirm.

## Background

Lucille Hunt helped care for her father before his death. She had access to his assets and was an authorized signer on his bank account. When her father died, her brother, James Rivers, was appointed administrator of their father's estate. Rivers concluded that Hunt had "dissipated and wasted cash assets" of close to $70,000 during the last several years before their father's death. He also believed that Hunt converted $2,200 for her own use after selling their father's home for

2

that amount. Finally, he asserted that Hunt held estate sales at which she sold their father's personal belongings for close to $25,000, which Rivers believed Hunt kept for her own benefit. Rivers sued Hunt in July 2015, seeking a judgment in the amount of total assets wasted and dissipated and money unaccounted for from the sale of their father's personal and real property. Hunt answered. The case was set for trial in September 2016.

One week before trial, Hunt moved for a continuance, asserting that she had been in an accident, suffered severe back injuries, and was unable to travel for trial. Her motion was supported by a letter from her treating physician. The trial court granted the motion and reset the trial for February 6, 2017.

A few days before the second trial setting, Hunt moved for another continuance, asserting that she still was unable to travel due to her injuries. Her February 1 motion referred to the physician's letter she had attached to her first motion. The clerk's record contains a signed and file-stamped order dated February 3 that granted the motion and reset the case for trial on June 5, 2017, with a pretrial hearing set for a few days earlier, on May 31.

Hunt did not appear at the May 31 pretrial hearing or the June 5 trial date. The trial court entered a post-answer default judgment against Hunt. The trial court found that Hunt had used estate assets for her personal benefit and, after considering the "remaining value of the estate and the amount previously

withdrawn by [Hunt] without authorization or explanation," ordered that Hunt take nothing from the estate because she had "received in excess of what would otherwise . . . have been her interest in the proceeds of the estate." The judgment did not order Hunt to pay any damages.

Hunt moved for a new trial, arguing that neither she nor her counsel received notice of the June 5 trial date. Her motion was supported by her attorney's affidavit. Rivers responded and argued that the parties had communicated about the June 5 trial date, putting Hunt on notice. The trial court held a hearing, but Rivers did not receive notice of the hearing. The trial court held a second hearing and denied Hunt's motion for new trial. Hunt appeals.

## Denial of Motion for New Trial

Hunt argues that the trial court abused its discretion in denying her motion for new trial because she did not receive notice of the June 5 trial date and because she meets the new-trial test set forth in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

## A. Applicable law and standard of review

A post-answer default judgment is permissible when an opposing party files an answer but fails to appear for trial. *See Stoner v. Thompson,* 578 S.W.2d 679, 682 (Tex. 1979). But once the party has answered, she must be given adequate notice of a trial setting before a post-answer default judgment can be granted.

4

*Ashiru v. City of Rosenberg*, No. 01-12-00681-CV, 2013 WL 5302701, at *2 (Tex. App.—Houston [1st Dist.] Sept. 19, 2013, no pet.) (mem. op.) (reversing trial court's denial of new-trial motion because movant provided uncontradicted evidence that she had not received notice of trial setting and, as result, her failure to appear was not intentional or consciously indifferent conduct); *In re $475,001.16,* 96 S.W.3d 625, 627 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (providing that post-answer default judgment is valid only if defendant received notice of trial setting or default-judgment hearing); *see* TEX. R. CIV. P. 245 (providing that, "when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties").

If the defendant answers a lawsuit, receives proper notice of the trial setting, and fails to appear for trial, and the trial court grants a post-answer default judgment, the defendant may move for a new trial, which should be granted if she establishes all three of the *Craddock* prongs: (1) her nonappearance was the result of an accident or mistake and was not intentional or the result of conscious indifference; (2) the motion for new trial alleges a meritorious defense; and (3) granting the motion will not cause undue delay or otherwise injure the nonmovant. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009) (discussing *Craddock* test); *Maxx Builders, LLC v. Story*, No. 01-15-00850-CV, 2016 WL

5

3544495, at \*3 (Tex. App.—Houston [1st Dist.] June 28, 2016, no pet.) (mem. op.) (same).

"But when a defendant does not receive notice of the hearing, the defendant's lack of notice satisfies the first *Craddock* prong and renders analysis of the second and third prongs unnecessary." *Maxx Builders*, 2016 WL 3544495, at \*3; *see Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005) (per curiam) (holding that lack of notice renders analysis under second prong unnecessary and acknowledging, without deciding, that intermediate appellate courts have also dispensed with third prong).

A trial court's decision to overrule a motion to set aside a default judgment and grant a new trial is subject to review for abuse of discretion. *Dolgencorp*, 288 S.W.3d at 926; *Ashiru*, 2013 WL 5302701, at \*2.

## B.     Trial court did not abuse its discretion

Because it is dispositive, we address only whether Hunt met the first prong of the *Craddock* test, which required her to establish that her failure to appear for trial was not intentional or the result of conscious indifference. 133 S.W.2d at 126. "A defendant satisfies its burden as to the first *Craddock* element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (citing *In re R.R.*, 209

6

S.W.3d 112, 115 (Tex. 2006) (per curiam)). Along with her motion for new trial, Hunt presented evidence that she did not receive notice of the June 5 trial setting. Her evidence included an affidavit from her attorney, who averred that neither he nor his client received notice of the setting from the trial court.

But Hunt's evidence was controverted. Rivers submitted evidence, including a March 14, 2017 email from his firm to Hunt's attorney that discussed pretrial mediation and specifically noted that the "matter is currently set for trial on Monday, June 5th." Rivers also sent the email by fax and included a transmission-verification page with his controverting evidence.

In addition to providing controverting evidence, Rivers argued that Hunt had known of the earlier February 6 trial setting, requested a continuance of that trial setting, submitted a blank proposed order for the trial court to grant her motion, and was aware that the February 6 trial date had approached and passed; thus, according to Rivers, Hunt had adequate information to alert her of the need to anticipate a ruling on her motion for a continuance and take reasonable steps to determine when she needed to appear next.

At the hearing on Hunt's motion for new trial, Hunt's counsel acknowledged receiving the March 14 email that referenced the June 5 trial date but stated that he "didn't catch that in there" and, therefore, "didn't calendar it." Hunt's counsel

again asserted that neither he nor his client received notice from the trial court of the June 5 trial setting.

When a movant's new-trial evidence is controverted by the nonmovant, it is the duty of the trial court, as the factfinder at a hearing on the motion for new trial, to determine the facts surrounding the default circumstances. *Dougherty-Williams v. Dougherty*, No. 01-13-01087-CV, 2014 WL 2809827, at *6 (Tex. App.—Houston [1st Dist.] June 19, 2014, no pet.). The trial court, as factfinder, is the sole judge of each witness's credibility and the weight to be given to their testimony. *Id.* And "when we review a ruling that results from the trial court's having resolved underlying facts, we must defer to the trial court's factual resolutions, and any credibility determinations that may have affected those resolutions, and may not substitute our judgment for the trial court's judgment in those matters." *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The trial court considered Hunt's evidence that she did not receive notice of the June 5 trial setting from the trial court and did not notice the reference to the setting in the March 14 correspondence. And the trial court considered Rivers's evidence that Rivers communicated the trial date to Hunt almost three months before the trial date in an email that Hunt's attorney acknowledged receiving and by fax.

We must defer to the trial court's credibility determinations. It was within the trial court's discretion to disbelieve Hunt's attorney's assertion that he did not "catch" the trial-date reference in the email. It also was within the trial court's discretion to infer from the entire body of evidence that Hunt's attorney knew the earlier February trial date had passed, knew Hunt had requested a new trial date, yet did not act to determine the new trial date and ensure her appearance for trial. On this evidence and in light of the trial court's credibility determinations, we conclude that the trial court reasonably could have found that the failure to appear was intentional or consciously indifferent conduct. Thus, we further conclude that the trial court did not abuse its discretion in denying the motion for new trial.

## Conclusion

We affirm.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

9